IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF ALASKA,<br>by Attorney General Bruce M. Botelho<br>Consumer Protection/Antitrust Unit<br>1031 West Fourth Avenue, Suite 200<br>Anchorage, AK  99501;<br><br>STATE OF ARKANSAS,<br>by Attorney General Mark Pryor<br>200 Tower Building<br>323 Center Street<br>Little Rock, AR  72201-2601;<br><br>STATE OF CALIFORNIA,<br>by Attorney General Bill Lockyer<br>300 South Spring St., Suite 5000<br>Los Angeles, CA  90013;<br><br>STATE OF COLORADO,<br>by Attorney General Ken Salazar<br>1525 Sherman Street, Fifth Floor<br>Denver, CO  80203;<br><br>STATE OF CONNECTICUT,<br>by Attorney General Richard Blumenthal<br>Antitrust Department<br>110 Sherman Street<br>Hartford, CT  06105;<br><br>DISTRICT OF COLUMBIA,<br>by Corporation Counsel John M. Ferren<br>441 4th Street, N.W.<br>Washington, D.C.  20001; | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL**

CASE NUMBER: 1:98CV03115
JUDGE: Thomas F. Hogan

**FILED**

FEB 0 8 1999

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

21

STATE OF FLORIDA,                                          )
by Attorney General Robert A. Butterworth                  )
Antitrust Section                                          )
PL-01, The Capitol                                         )
Tallahassee, FL 32399-1050;                                )
                                                           )
STATE OF IDAHO,                                            )
by Attorney General Alan G. Lance                          )
Consumer Protection Unit                                   )
700 W. Jefferson Street, Room 210                          )
Boise, ID 83720-0010;                                      )
                                                           )
STATE OF ILLINOIS,                                         )
by Attorney General James E. Ryan                          )
Antitrust Bureau                                           )
100 West Randolph Street                                   )
Chicago, IL 60601;                                         )
                                                           )
STATE OF IOWA,                                             )
by Attorney General Thomas J. Miller                       )
Iowa Department of Justice                                 )
1300 E. Walnut                                             )
Des Moines, IA 50319;                                      )
                                                           )
COMMONWEALTH OF KENTUCKY,                                  )
by Attorney General Albert Benjamin Chandler III           )
1024 Capital Center Drive                                  )
Frankfort, KY 40602-2000;                                  )
                                                           )
STATE OF LOUISIANA,                                        )
by Attorney General Richard P. Ieyoub                      )
301 Main Street, Suite 1250                                )
Baton Rouge, LA 70804;                                     )
                                                           )
STATE OF MAINE                                             )
by Attorney General Andrew Ketterer                        )
6 State House Station                                      )
Augusta, ME 04333-0006;                                    )

2

**STATES' AMENDED COMPLAINT, February 8, 1999**

STATE OF MICHIGAN,                                          )
by Attorney General Jennifer M. Granholm                    )
Consumer Protection Division                                )
Antitrust and Franchise Section                             )
670 G. Mennen Williams Building                             )
525 W. Ottawa Street                                        )
P. O. Box 30213                                             )
Lansing, MI  48913;                                         )
                                                            )
STATE OF MINNESOTA,*                                        )
by Attorney General Mike Hatch                              )
Antitrust and Commerce Division                             )
N.C.L. Tower, Suite 1200                                    )
445 Minnesota Street                                        )
St. Paul, MN  55101;                                        )
                                                            )
STATE OF MISSOURI                                           )
by Attorney General Jeremiah W. (Jay) Nixon                 )
Consumer Protection Division                                )
111 North Seventh Street                                    )
Suite 204                                                   )
St. Louis, MO  63101;                                       )
                                                            )
STATE OF NEW MEXICO,                                        )
by Attorney General Patricia A. Madrid                      )
Antitrust Unit                                              )
6301 Indian School Road, Suite 400                          )
Albuquerque, NM  87110;                                     )
                                                            )

---

* Pursuant to Fed. R. Civ. P. 25(d), the caption in this action should be changed to reflect the election of Mike Hatch
to the office of Attorney General of the State of Minnesota.

**STATES' AMENDED COMPLAINT, February 8, 1999**

STATE OF NEW YORK,**                        )
by Attorney General Eliot Spitzer           )
Antitrust Bureau                            )
120 Broadway, Suite 26-01                   )
New York, NY  10271;                        )
                                            )
STATE OF NORTH CAROLINA,                    )
by Attorney General Michael F. Easley       )
Consumer Protection/Antitrust Section       )
114 W. Edenton Street                       )
P.O. Box 629                                )
Raleigh, North Carolina 27602;              )
                                            )
STATE OF OHIO,                              )
by Attorney General Betty D. Montgomery     )
Antitrust Section                           )
140 East Town Street, 1st Floor             )
Columbus, Ohio 43215;                       )
                                            )
STATE OF OKLAHOMA,                          )
by Attorney General W.A. Drew Edmondson     )
4545 N. Lincoln Boulevard                   )
Suite 260                                   )
Oklahoma City, OK  73105;                   )
                                            )
STATE OF OREGON                             )
by Attorney General Hardy Myers             )
Department of Justice                       )
Justice Building                            )
1162 Court Street NE, Suite 100             )
Salem, OR  97310;                           )

---

** Pursuant to Fed. R. Civ. P. 25(d), the caption in this action should be changed to reflect the election of Eliot Spitzer to the office of Attorney General of the State of New York.

**STATES' AMENDED COMPLAINT, February 8, 1999**

COMMONWEALTH OF PENNSYLVANIA            )
by Attorney General D. Michael Fisher            )
Antitrust Section            )
14th Floor, Strawberry Square            )
Harrisburg, PA  17120;            )
            )
STATE OF SOUTH CAROLINA,            )
by Attorney General Charles M. Condon            )
Rembert C. Dennis Building            )
1000 Assembly Street, Suite 501            )
Columbia, SC  29211-1549;            )
            )
STATE OF SOUTH DAKOTA            )
by Attorney General Mark Barnett            )
500 East Capitol            )
Pierre, SD  57501-5070;            )
            )
STATE OF TENNESSEE,            )
by Attorney General and Reporter Paul G. Summers )
Antitrust Division            )
425 5th Avenue North            )
Nashville, TN  37243;            )
            )
STATE OF TEXAS,            )
by Attorney General John Cornyn            )
Office of the Attorney General            )
300 W. 15th Street, 9th Floor            )
Austin, TX  78711-2548;            )
            )
STATE OF UTAH,            )
by Attorney General Jan Graham            )
Antitrust Section            )
160 East 300 South            )
Salt Lake City, UT  84114-0872;            )
            )
STATE OF VERMONT,            )
by Attorney General William H. Sorrell            )
Antitrust and Consumer Fraud Unit            )
109 State Street            )
Montpelier, VT  05609-1001;            )

5

**STATES' AMENDED COMPLAINT, February 8, 1999**

STATE OF WASHINGTON                                    )
by Attorney General Christine O. Gregoire             )
Antitrust Section                                      )
900 Fourth Avenue, Suite 2000                          )
Seattle, WA  98164-1012;                               )
                                                       )
STATE OF WEST VIRGINIA,                                )
by Attorney General Darrell V. McGraw, Jr.             )
Consumer Protection and Antitrust Division             )
812 Quarrier Street                                    )
Charleston, WV  25301;                                 )
                                                       )
STATE OF WISCONSIN,                                    )
by Attorney General James E. Doyle                     )
Antitrust Unit                                         )
123 West Washington Avenue                             )
Madison, WI  53703-7857;                               )
                                                       )
                     Plaintiffs,                       )
                                                       )
                     v.                                )
                                                       )
MYLAN LABORATORIES, INC.,                              )
130 Seventh Street,                                    )
1030 Century Building,                                 )
Pittsburgh, Pennsylvania 15222;                        )
                                                       )
CAMBREX CORPORATION,                                   )
One Meadowlands Plaza                                  )
East Rutherford, New Jersey 07073;                     )
                                                       )
PROFARMACO S.R.L.                                      )
Via Cucchiari, 17                                      )
1-20155 Milano, Italy ;                                )
                                                       )
GYMA LABORATORIES OF AMERICA, INC.,                    )
135 Cantiague Rock Road,                               )
Westbury, New York 11590;                              )

**STATES' AMENDED COMPLAINT, February 8, 1999**

SST CORPORATION,                              )
635 Brighton Road,                            )
Clifton, New Jersey 07015,                    )
                                              )
            Defendants.                       )
                                              )
_____ )

## I.

## SUMMARY OF COMPLAINT

1.      The States of Alaska, Arkansas, California, Colorado, Connecticut, Florida, Idaho, Illinois, Iowa, Louisiana, Maine, Michigan, Minnesota, Missouri, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, South Carolina, South Dakota, Texas, Tennessee, Utah, Vermont, Washington, West Virginia, Wisconsin; the Commonwealths of Kentucky and Pennsylvania; and the District of Columbia (collectively, Plaintiff States or States), by and through their Attorneys General, bring this action as *parens patriae* on behalf of natural persons in their respective States; on behalf of their respective States' general economies in their sovereign capacities; and/or in their proprietary capacities on behalf of departments, bureaus and agencies of state government as injured purchasers or reimbursers, against Defendants Mylan Laboratories, Inc. (Mylan), Cambrex Corporation (Cambrex), Profarmaco S.r.l. (Profarmaco), Gyma Laboratories of America, Inc. (Gyma), and SST Corporation (SST) (collectively, Defendants).

2.      The States seek relief to remedy and compensate for injuries sustained as a result of the Defendants' violations of the antitrust laws of the United States and related laws of the States. The States allege Defendants Mylan, Cambrex, Profarmaco and Gyma:  1) conspired to monopolize the markets for generic lorazepam tablets and generic clorazepate tablets; and 2)

**STATES' AMENDED COMPLAINT, February 8, 1999**

entered into unlawful contracts, combinations and conspiracies relating to the supply of the active pharmaceutical ingredients (APIs) for clorazepate and lorazepam in unreasonable restraint of trade. The States further allege Defendant Mylan attempted to monopolize and did in fact unlawfully monopolize the markets for generic lorazepam and generic clorazepate tablets. The States also allege Defendants Mylan, Cambrex, Profarmaco, Gyma and SST conspired and agreed to fix, raise, or stabilize the prices of lorazepam API. Finally, the States allege supplemental state law claims.

II.

JURISDICTION AND VENUE

3. This Complaint, which alleges violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, is filed under and jurisdiction is conferred upon this Court by Sections 4, 4c, 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 15c, 22 and 26, and 28 U.S.C. §1331.

4. This Complaint also alleges violations of state antitrust and/or unfair competition statutes and related state laws as set forth in Paragraphs 89 through 165 below, and seeks damages, civil penalties and/or equitable relief under those state laws for claims brought by the following States: Alaska, Arkansas, California, Colorado, Connecticut, Florida, Idaho, Illinois, Iowa, Louisiana, Maine, Michigan, Minnesota, Missouri, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, South Carolina, South Dakota, Texas, Tennessee, Utah, Vermont, Washington, West Virginia, Wisconsin; the Commonwealth of Kentucky; and the District of Columbia. All claims under federal and state law are based upon a common nucleus of operative facts and the entire action commenced by this Complaint constitutes a single case which would ordinarily be tried in one judicial proceeding.

8

**STATES' AMENDED COMPLAINT, February 8, 1999**

5.     This Court has jurisdiction of the action under the provisions of 28 U.S.C. §§ 1331, 1337 and 1367(a), as well as under the principles of supplemental jurisdiction. Supplemental jurisdiction would avoid unnecessary duplication and multiplicity of actions in law and in equity, and should be exercised in the interests of judicial economy, convenience and fairness.

6.     Venue is proper in this district under Section 12 of the Clayton Act, 15 U.S.C. § 22  and 28 U.S.C. § 1391(b), (c) and (d).  At all times relevant to the bringing of this action, Defendants transacted business, did business, were found or resided in the District of Columbia or because the claims alleged arose, in part, in this judicial district.  In addition, as to defendant Profarmaco, venue is proper pursuant 15 U.S.C. § 1391(d).

III.

THE PARTIES

7.     The States bring this action by and through their Attorneys General, as *parens patriae* on behalf of natural persons; on behalf of their respective States' general economies in their sovereign capacities; and/or in their proprietary capacities on behalf of departments, bureaus and agencies of state government, as injured purchasers (direct, indirect, or as assignees) or as reimbursers under state Medicaid and other programs.

8.     Defendant Mylan is a corporation organized, existing, and doing business under and by virtue of the laws of Pennsylvania.  Mylan's office and principal place of business is located at 130 Seventh Street, 1030 Century Building, Pittsburgh, Pennsylvania 15222. Mylan is engaged in the business of developing, licensing, manufacturing, marketing, and distributing generic and proprietary pharmaceutical and wound care products, including at least 91 generic

9

drugs.  In the twelve months ending March 31, 1998, Mylan had revenues of $555.4 million and net income of $100.7 million.  Mylan Pharmaceuticals, Inc., a wholly owned subsidiary of Mylan Laboratories, is one of the world's largest generic drug companies.  Mylan Pharmaceuticals is located at 781 Chestnut Ridge Road, P.O. Box 4310, Morgantown, West Virginia 26504-4310.  Mylan Laboratories has ultimate control over the activities of Mylan Pharmaceuticals.  Upon information and belief, UDL Laboratories, Inc., a wholly owned subsidiary of Mylan Laboratories, specializes in packaging technology and produces unit dose multi-source pharmaceuticals.  UDL Laboratories is located in Loves Park, Illinois, and its mailing address is P.O. Box 2629, Loves Park, Illinois 61132-2629.  Upon information and belief, at all relevant times, Mylan Laboratories has had ultimate control over the activities of UDL Laboratories.

9.      Defendant Cambrex is a corporation organized, existing, and doing business under and by virtue of the laws of Delaware.  Cambrex's office and principal place of business are located at One Meadowlands Plaza, East Rutherford, New Jersey 07073.  Cambrex is engaged in the business of manufacturing and selling chemicals for pharmaceuticals, cosmetics, agriculture, and other industrial uses.  In 1997, Cambrex had revenues of $380 million and net income of $17.8 million.  Cbm Technologies, Inc. (Cbm) is a subsidiary of Cambrex located at 1 East First Street, Reno, Nevada 89501.  Upon information and belief, Cbm was the primary contracting party, on behalf of Cambrex, in the exclusive licensing arrangements with Mylan described below.  Upon information and belief, at all relevant times, Cambrex has had ultimate control over the activities of Cbm.

10.     Defendant Profarmaco S.r.l., a wholly owned subsidiary of Cambrex, is based in Milan, Italy and is located at Via Cucchiari, 7, 1-20155, Milano, Italy.  Profarmaco is engaged in

**STATES' AMENDED COMPLAINT, February 8, 1999**

the business of manufacturing chemicals, including APIs, and selling them to drug manufacturers in the United States and elsewhere.  The API, which is the chemical that allows the drug to affect the body, is the most essential raw material for a pharmaceutical product.  Upon information and belief, at all relevant times, Cambrex has had ultimate control over the activities of Profarmaco.

11.     Defendant Gyma is a corporation organized, existing, and doing business under and by virtue of the laws of New York.  Gyma's office and principal place of business is located at 135 Cantiague Rock Road, Westbury, New York 11590.  Gyma is engaged in the business of selling APIs and other chemicals to the pharmaceutical industry.  In 1997, Gyma had sales of approximately $91 million.  Gyma buys APIs from Profarmaco and other firms and resells them to generic drug manufacturers in the United States.

12.     Defendant SST is a corporation organized, existing, and doing business under and by virtue of the laws of New Jersey.  SST's office and principal place of business is located at 635 Brighton Road, Clifton, New Jersey 07015.  SST is engaged in the business of selling APIs and other chemicals to the pharmaceutical industry.  SST buys APIs from Fabbricca Italiana Sintetici SpA (FIS) and other firms and resells them to generic drug manufacturers in the United States.

IV.

CO-CONSPIRATORS

13.     Upon information and belief, other persons, firms, corporations and entities not named as Defendants herein have participated as co-conspirators with the Defendants in the violations alleged in this Complaint, and have performed acts and made statements in furtherance thereof.

STATES' AMENDED COMPLAINT, February 8, 1999

V.

THE GENERIC DRUG INDUSTRY

14.     Generic drugs, which are chemically identical versions of branded drugs, cannot be marketed until after the patent on the branded drug has expired.  Firms that manufacture and market generic drugs often specialize in such drugs, although Mylan manufactures both generic and branded drugs.  Generic drugs typically are sold at substantial discounts from the price of branded drugs.

15.     Mylan and other generic drug manufacturers require the approval of the United States Food and Drug Administration (FDA) to market a generic product in the United States.  For each generic drug, the manufacturer must file an Abbreviated New Drug Application (ANDA) with the FDA to establish that its version of the drug is therapeutically equivalent to the branded drug.  FDA approval of an ANDA takes an average of about 18 months, although the approval process can take two years or more.

16.     Typically, the generic manufacturer purchases the API from a specialty chemical manufacturer (API supplier).  The generic manufacturer combines the API with inactive fillers, binders, colorings, and other chemicals to produce a finished product.

17.     To sell an API in the United States, the API supplier must file a Drug Master File (DMF) with the FDA.  The DMF explains the processes that the API supplier uses to make the API and to test chemical equivalence and bioequivalence to the brand product.  To use an API, the generic manufacturer's ANDA must refer to the API supplier's DMF filed with the FDA.  More than one drug manufacturer can reference the DMF of the same API supplier.  A generic manufacturer that wants or needs to change its API supplier must obtain FDA approval of an

12

**STATES' AMENDED COMPLAINT, February 8, 1999**

ANDA supplement, which includes a reference to the new supplier's DMF and test results regarding the generic manufacturer's product using the new API. This process can take as long as three years, with an average of about eighteen months.

18.     Lorazepam and clorazepate are two of the approximately 91 generic drugs that Mylan currently manufactures and sells in tablet form. Lorazepam is used to treat anxiety, tension, agitation, and insomnia, and as a preoperative sedative. Doctors issue over 18 million prescriptions a year for lorazepam tablets. Because lorazepam is used to treat chronic conditions and is heavily prescribed for nursing home and hospice patients, lorazepam users tend to stay on the drug for long periods of time. Clorazepate is used to treat anxiety and in adjunct therapy for nicotine and opiate withdrawal. Doctors issue over three million prescriptions a year for clorazepate tablets.

19.     Profarmaco and FIS both manufacture APIs in Italy. Both companies hold DMFs for lorazepam API and clorazepate API, and have supplied such APIs to drug manufacturers in the United States. Foreign firms, like Profarmaco and FIS, that supply APIs to the United States typically have distributors in the United States who purchase APIs and resell them to generic drug manufacturers in the United States. Mylan purchases its lorazepam and clorazepate API from Gyma, Profarmaco's United States distributor of these products. Several other generic drug manufacturers have purchased lorazepam API from SST, FIS's United States distributor of this product. Mylan has never purchased FIS's lorazepam API from SST because FIS is not an approved lorazepam supplier for Mylan, -- *i.e.*, Mylan's ANDA does not reference FIS's DMF.

13

**STATES' AMENDED COMPLAINT, February 8, 1999**

VI.

TRADE AND COMMERCE

20.     At all times relevant to this Complaint, Defendants Mylan, Cambrex, Profarmaco, Gyma and SST participated in the market for generic pharmaceuticals throughout the United States.

21.     Defendant Mylan manufactured, marketed, sold and distributed generic pharmaceutical products throughout the United States.  Mylan's products were transported across state lines and were sold in the various states.  The products sold and distributed by Defendant Mylan were shipped in interstate commerce.

22.     Defendant Gyma is engaged in the business of selling APIs and other chemicals to the pharmaceutical industry.  Gyma buys APIs from Profarmaco and other firms and resells them to generic drug manufacturers in the United States.

23.     Defendant SST is engaged in the business of selling APIs and other chemicals to the pharmaceutical industry.  SST buys APIs from FIS and other firms and resells them to generic drug manufacturers in the United States.

24.     Defendant Profarmaco is engaged in the business of manufacturing chemicals, including APIs, and selling them to drug manufacturers in the United States and elsewhere.

25.     Defendant Cambrex is engaged in the business of manufacturing and selling chemicals for pharmaceuticals, cosmetics, agriculture, and other industrial uses.

26.     The activities of the Defendants, including manufacturing, marketing, distributing and selling pharmaceutical products, were in the regular, continuous and substantial flow of

14

**STATES' AMENDED COMPLAINT, February 8, 1999**

interstate commerce and have had and continue to have a substantial effect upon interstate commerce.

## VII.

## RELEVANT MARKETS

27.     There are four relevant markets:  1) the market for generic lorazepam tablets approved for sale in the United States; 2) the market for generic clorazepate tablets approved for sale in the United States; 3) the market for lorazepam API approved for sale in the United States; and 4) the market for clorazepate API approved for sale in the United States.

## VIII.

## ANTICOMPETITIVE CONDUCT

28.     In 1997, Mylan embarked on a strategy to raise the prices of some of its generic drugs and maintain these prices at inflated levels, thereby increasing the profitability of these drugs.  One part of this strategy was to seek from its API suppliers long-term exclusive licenses for the DMFs of certain APIs selected by Mylan because of limited competition.   If Mylan obtained such an exclusive license, no other generic drug manufacturer could use that supplier's API to make the drug in the United States.

29.     Ultimately, Mylan sought exclusive licenses for the DMFs for lorazepam API and clorazepate API.

30.     Mylan began negotiating for exclusive licenses with Profarmaco and its distributor Gyma, which sold lorazepam and clorazepate APIs to Mylan.  The parties negotiated at meetings in Bologna, Italy; in London; and in New York.  These negotiations concerned Mylan's proposal to Profarmaco that Profarmaco license exclusively to Mylan, for ten years,

**STATES' AMENDED COMPLAINT, February 8, 1999**

Profarmaco's DMFs for lorazepam and clorazepate API.  The exclusive licenses would provide Mylan complete control over Profarmaco's entire supply of lorazepam and clorazepate API entering the United States market.

31.    Prior to these negotiations, Gyma sold Profarmaco's lorazepam API to Mylan, Watson Pharmaceuticals, Inc. (Watson), and Purepac, a subsidiary of Faulding, Inc. (Purepac), and its clorazepate API to Mylan and Watson.  Purepac and Watson are generic drug producers that compete with Mylan.  At this time, Profarmaco (through Gyma) was the only source selling lorazepam and clorazepate API to generic manufacturers in the United States.  FIS, which previously had supplied the United States market with lorazepam API, recently had exited the market because it no longer had any customers.  With complete control of Profarmaco's supply of these products, and by refusing to sell any to its competitors, Mylan could deny its competitors access to the most important ingredient for producing lorazepam and clorazepate tablets.

32.    In return for the ten year exclusive licenses, Mylan offered to pay Cambrex, Profarmaco, and Gyma a percent of its gross profits on its sales of lorazepam and clorazepate tablets, regardless of whether Mylan purchased the API from Profarmaco through Gyma.  The profit sharing percentage offered by Mylan was smaller for lorazepam than clorazepate.  As Mylan explained to Cambrex, Profarmaco, and Gyma, the reason for this difference was that Mylan intended to seek a similar exclusive agreement on lorazepam API with FIS, a competitor of Profarmaco, and with FIS's distributor, SST.  Under this proposed agreement, Mylan would also pay FIS and SST a certain percent of Mylan's gross profits on lorazepam tablets, even though Mylan could not utilize FIS lorazepam API due to FDA regulations.

16

**STATES' AMENDED COMPLAINT, February 8, 1999**

33.     In October 1997, Mylan approached SST, FIS's distributor of lorazepam API in the United States, regarding a possible second exclusive licensing agreement for lorazepam API. The intent of this approach was to deny Mylan's competitors an alternate source of lorazepam API. Because of FDA regulations which require a manufacturer's ANDA to reference the DMF of its supplier, Mylan could not even use FIS's lorazepam API. Before Mylan could use FIS's product, it was required to supplement its ANDA, which could take an average of 18 months. Mylan explained to SST that it intended to raise the price of lorazepam tablets by controlling the supply of lorazepam API. In exchange for this exclusive license which would prevent any Mylan competitor from using FIS's lorazepam API, Mylan offered SST a percent of Mylan's gross profits on lorazepam tablets. Under this proposal, SST would receive these profits even though Mylan would not purchase from SST any lorazepam API. SST turned down Mylan's proposed licensing arrangement. Had SST accepted, none of Mylan's competitors would have been able to use FIS lorazepam API to make or sell lorazepam tablets in the United States.

34.     Sometime in the fall of 1997, Mylan approached Abbott Laboratories, the manufacturer of Tranxene, the brand name clorazepate product, which manufactured clorazepate API for its own use and thus was a possible supplier of clorazepate API for the generic clorazepate tablets market. Mylan inquired about purchasing clorazepate API, even though before Mylan could use Abbott's product, it was required to supplement its ANDA, which would take an average of 18 months.

35.     Profarmaco signed the ten year exclusive agreements licensing the two DMFs to Mylan on November 14, 1997. Through these agreements, Mylan obtained control over the supply of Profarmaco's APIs for lorazepam and clorazepate in the United States, denying

17

**STATES' AMENDED COMPLAINT, February 8, 1999**

Mylan's competitors (particularly Gyma's customers Watson and Purepac) access to these essential raw materials. In 1997, Profarmaco, through Gyma, supplied over 90% of the lorazepam API and 100% of the clorazepate API to generic manufacturers in the United States market. In separate agreements, Mylan agreed to pay Gyma a percentage of Mylan's gross profits on the sale of lorazepam and clorazepate tablets as compensation for Gyma's role in the negotiations leading to the exclusive licensing agreements with Profarmaco.

36.     Without a source of supply, Watson and Purepac attempted to secure alternate API suppliers. Recognizing that Mylan now had control over lorazepam API from Profarmaco, Purepac even approached Mylan to obtain some lorazepam API on an emergency basis. Mylan refused to sell this product to Purepac.

37.     Shortly after Mylan signed the ten year exclusive licensing agreements with Profarmaco, SST's president met in Pittsburgh, Pennsylvania, with the Mylan vice president who has responsibility for purchasing APIs. At this meeting, which occurred on or around November 20, 1997, SST explained to Mylan that it would not license FIS's DMF for lorazepam API to Mylan, at least in part out of concern that such an agreement could violate the antitrust laws. Nevertheless, through the Pittsburgh meeting, or otherwise in the course of their exchanges of information before and after it, Mylan and SST conspired and reached an agreement to fix, raise or stabilize the prices of lorazepam API.

38.     On January 12, 1998, despite no significant increase in its costs, Mylan raised its price of clorazepate tablets to State Medicaid programs, wholesalers, retail pharmacy chains, and other customers by amounts ranging from 1,900 percent to over 3,200 percent, depending on the bottle size and strength. For example, a 500 count bottle of 7.5 mg clorazepate tablets increased

in price from $11.36 to $377.00.  On March 3, 1998, despite no significant increase in its costs, Mylan raised its price of lorazepam tablets by amounts ranging from 1,900 percent to over 2,600 percent, depending on the bottle size and strength.  For example, a 500-count bottle of 1 mg lorazepam tablets increased in price from $7.30 to $191.50.  The ultimate retail price to consumers was even higher.  Mylan's competitors matched these price increases for lorazepam and clorazepate tablets.  After the above-mentioned price increases were effected, departments, bureaus, or agencies of the governments of some States (or such States' assignors) purchased lorazepam or clorazepate tablets at supracompetitive prices from Mylan or its subsidiaries, including UDL Laboratories, Inc.

39.     Shortly after Mylan raised its price of lorazepam tablets, and despite no significant increase in its costs, SST carried out its part of the agreement by raising the price of FIS lorazepam API by approximately 1,900 percent.  SST sold FIS's lorazepam API to Geneva -- one of Mylan's competitors.  Geneva has set its price for lorazepam tablets at approximately Mylan's level.

40.     As a result of these substantial and unprecedented agreements and price increases for lorazepam and clorazepate tablets, many purchasers, including pharmacies, hospitals, insurers, managed care organizations, wholesalers, government agencies, patients, consumers and others, have paid substantially higher prices.  Moreover, some patients may have stopped taking lorazepam and clorazepate tablets altogether, or been forced to reduce the quantity they take, because they cannot afford them.

**STATES' AMENDED COMPLAINT, February 8, 1999**

41.     As a result of these substantial and unprecedented price increases on lorazepam and clorazepate tablets, Mylan, Cambrex, Profarmaco, Gyma and SST have profited, and continue to profit, from their unlawful conduct, to the detriment of consumers.

IX.

LACK OF PROCOMPETITIVE JUSTIFICATION

42.     The exclusive licensing agreements, and Defendants' other conduct intended to lock-up the supply of lorazepam and clorazepate API, lack any legitimate business or procompetitive justification.  Moreover, any justification that may exist does not outweigh the substantial anticompetitive effects of Defendants' conduct.

43.     The exclusive licensing agreements were not reasonably necessary to protect Mylan's supply of lorazepam and clorazepate API.  Profarmaco never indicated that it was considering no longer making either of these products.  Even if Mylan had legitimate concerns about the supply of these APIs, like other generic pharmaceutical manufacturers, Mylan could have entered into a less restrictive requirements contract which would have assured Mylan a source of supply but not denied Mylan's competitors access to the same source.  Moreover, its attempt to obtain an exclusive agreement with FIS would provide no assurances of supply, given that Mylan could not use any FIS lorazepam API for at least a year, due to FDA regulations.

X.

EFFECTS

44.     The acts and practices of the Defendants as herein alleged have had the purpose or effect, or the tendency or capacity, to restrain competition unreasonably and to injure competition within each State and throughout the United States in the following ways, among others:

20

**STATES' AMENDED COMPLAINT, February 8, 1999**

45.     Restraining competition in the markets for lorazepam and clorazepate APIs and tablets;

46.     Fixing, raising, stabilizing, or otherwise tampering with the prices of lorazepam API;

47.     Raising the cost that pharmacies, hospitals, insurers, managed care organizations, wholesalers, government agencies, consumers, and others who pay for lorazepam and clorazepate tablets;

48.     Depriving consumers of access to needed pharmaceuticals and thereby injuring their health; and

49.     Depriving consumers of the benefits of competition among generic pharmaceutical manufacturers and entry from new competitors.

## XI.

## INJURY

50.     As a direct and proximate result of the unlawful conduct alleged above, the States were not and are not able to purchase, or pay reimbursements for purchases of, lorazepam and clorazepate at prices determined by free and open competition, and consequently have been injured in their business and property in that, *inter alia,* they have paid more and continue to pay more for lorazepam and clorazepate than they would have paid in a free and open competitive market.  The States cannot quantify at this time the precise amount of monetary harm which they have sustained, but allege that such harm is substantial.  A precise determination of this amount will require discovery from the books and records of the Defendants and third parties.

51.     As a direct and proximate result of the unlawful conduct alleged above, consumers in the Plaintiff States were not and are not able to purchase lorazepam and clorazepate at prices determined by free and open competition, and consequently have been injured in their business or property in that, *inter alia*, they have paid more and continue to pay more for lorazepam and clorazepate than they would have paid in a free and open competitive market.

21

**STATES' AMENDED COMPLAINT, February 8, 1999**

The States cannot quantify at this time the precise amount of monetary harm which their consumers have sustained, but allege that such harm is substantial. A precise determination of this amount will require discovery from the books and records of the Defendants and third parties.

52.   As a direct and proximate result of the unlawful conduct alleged above, the general economies of the States have sustained injury, and are threatened with further injury to their business and property unless the Defendants are enjoined from their unlawful conduct.

53.   As a direct and proximate result of the unlawful conduct alleged above, the defendants have unjustly profited through inflated profit margins and have thus far retained the illegally obtained profits.

54.   Defendants' unlawful conduct is continuing and will continue unless the injunctive and equitable relief request is granted. The States do not have an adequate remedy at law.

XII.

FIRST CLAIM FOR RELIEF -- CONSPIRACY TO

MONOPOLIZE GENERIC LORAZEPAM TABLETS MARKET

55.   The States reallege and incorporate by reference paragraphs 1 through 54.

56.   Mylan, Cambrex, Profarmaco, and Gyma conspired to act together to obtain monopoly power for Mylan in the generic lorazepam tablets market in the United States in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

57.   Mylan acted with a specific intent to monopolize, and to destroy competition in, the generic lorazepam tablets market. Mylan devised and implemented a calculated campaign to raise the price and profitability of lorazepam by locking up the supply of lorazepam API, the most essential ingredient for making lorazepam tablets. Each of the co-conspirators acted with

22

**STATES' AMENDED COMPLAINT, February 8, 1999**

the specific intent that Mylan obtain monopoly power in the generic lorazepam tablets market, and through their profit sharing arrangement and the resulting higher prices, the co-conspirators each have profited significantly from their conspiracy to the detriment of consumers.

58.     In furtherance of this conspiracy, these Defendants entered into agreements and profit sharing arrangements whereby Mylan obtained the exclusive license to Profarmaco's lorazepam API.  This license had the purpose and effect of denying, to Mylan's competitors in the generic lorazepam tablets market, the supply of an essential raw material.  Also in furtherance of this conspiracy, Mylan -- with the full knowledge and approval of Cambrex, Profarmaco, and Gyma -- sought to obtain the exclusive right to the only other active supplier of lorazepam API to generic manufacturers.

XIII.

SECOND CLAIM FOR RELIEF -- CONSPIRACY TO

MONOPOLIZE GENERIC CLORAZEPATE TABLETS MARKET

59.     The States reallege and incorporate by reference paragraphs 1 through 54.

60.     Mylan, Cambrex, Profarmaco, and Gyma conspired to act together to obtain monopoly power for Mylan in the generic clorazepate tablets market in the United States in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

61.     Mylan acted with a specific intent to monopolize, and to restrain and destroy competition in, the generic clorazepate tablets market.  Mylan devised and implemented a calculated campaign to raise the price and profitability of clorazepate by locking up the supply of clorazepate API, the most essential ingredient for making clorazepate tablets.  Each of the co-conspirators acted with the specific intent that Mylan obtain monopoly power in the generic

23

**STATES' AMENDED COMPLAINT, February 8, 1999**

clorazepate tablets market, and through their profit sharing arrangement and the resulting higher prices, the co-conspirators each have profited significantly from their conspiracy to the detriment of consumers.

62.     In furtherance of this conspiracy, these Defendants entered into agreements and profit sharing arrangements whereby Mylan obtained the exclusive license to Profarmaco's clorazepate API.  This license had the purpose and effect of denying, to Mylan's competitors in the generic clorazepate tablets market, the supply of an essential raw material.  Also in the furtherance of this conspiracy, Mylan approached Abbott Laboratories -- which manufactured clorazepate API for use in Abbott's branded clorazepate -- to inquire about purchasing clorazepate API, even though FDA regulations effectively precluded Mylan from using, for at least a year, any Abbott clorazepate API.

XIV.

THIRD CLAIM FOR RELIEF

AGREEMENT IN RESTRAINT OF TRADE ON LORAZEPAM

63.     The States reallege and incorporate by reference paragraphs 1 through 54.

64.     Mylan's exclusive licensing agreement with Cambrex and Profarmaco, pursuant to which Mylan obtained the exclusive right to Profarmaco's supply of lorazepam API, and Gyma's compliance with it, unreasonably restricts competition and constitutes an unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

65.     Under this licensing agreement, Mylan licensed, on a ten year exclusive basis, Profarmaco's lorazepam API.   The purpose or effect of this agreement is to foreclose substantially the supply of lorazepam API to Mylan's competitors, thereby restraining trade and

24

**STATES' AMENDED COMPLAINT, February 8, 1999**

competition in the generic lorazepam tablets market and enabling Mylan to raise prices significantly.

66.     This agreement is not reasonably necessary to accomplish any procompetitive objective.  Moreover, any justification that may exist does not outweigh the substantial anticompetitive effect of Defendants' conduct.

XV.

FOURTH CLAIM FOR RELIEF

AGREEMENT IN RESTRAINT OF TRADE ON CLORAZEPATE

67.     The States reallege and incorporate by reference paragraphs 1 through 54.

68.     Mylan's exclusive licensing agreement with Cambrex and Profarmaco, pursuant to which Mylan obtained the exclusive right to Profarmaco's supply of clorazepate API, and Gyma's compliance with it, unreasonably restricts competition and constitutes an unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

69.     Under this licensing agreement, Mylan licensed, on a ten year exclusive basis, Profarmaco's clorazepate API.   The purpose or effect of this agreement is to foreclose substantially the supply of clorazepate API to Mylan's competitors, thereby restraining trade and competition in the generic clorazepate tablets market and enabling Mylan to raise prices significantly.

70.     This agreement is not reasonably necessary to accomplish any procompetitive objective.  Moreover, any justification that may exist does not outweigh the substantial anticompetitive effect of Defendants' conduct.

25

**STATES' AMENDED COMPLAINT, February 8, 1999**

XVI.

FIFTH CLAIM FOR RELIEF

MONOPOLIZATION OF GENERIC LORAZEPAM TABLETS MARKET

71.     The States reallege and incorporate by reference paragraphs 1 through 54.

72.     Mylan obtained monopoly power in the generic lorazepam tablets market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.  Using this monopoly power, Mylan raised the price of generic lorazepam tablets by amounts ranging from 1,900 percent to over 2,600 percent, depending on the bottle size and strength.

73.     Mylan willfully acquired its monopoly power by entering into an exclusive licensing agreement for Profarmaco's lorazepam API.  This exclusive license provided Mylan complete control over Profarmaco's supply of lorazepam API in the United States market, which enabled Mylan to deny its actual or potential competitors access to this essential ingredient for producing generic lorazepam tablets and significantly raise prices.

XVII.

SIXTH CLAIM FOR RELIEF -- ATTEMPTED

MONOPOLIZATION OF GENERIC LORAZEPAM TABLETS MARKET

74.     The States reallege and incorporate by reference paragraphs 1 through 54.

75.     Mylan acted with a specific intent to monopolize, and to destroy competition in, the generic lorazepam tablets market, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.  Mylan devised and implemented a calculated campaign to raise the price and profitability of lorazepam by locking up the supply of lorazepam API, the most essential ingredient for making generic lorazepam tablets.

26

**STATES' AMENDED COMPLAINT, February 8, 1999**

76.     Mylan has willfully engaged in a course of exclusionary conduct in order to obtain a monopoly in the generic lorazepam tablets market, including, *inter alia*: 1) entering into an exclusive licensing agreement for Profarmaco's lorazepam API; and 2) approaching SST -- the only other active distributor of lorazepam API to generic manufacturers in the United States -- proposing a similar licensing arrangement for FIS's lorazepam API, even though Mylan could not even use any of FIS's lorazepam API because of FDA regulations.

77.     At the time Mylan engaged in these acts, it had a dangerous probability of succeeding in controlling the supply of lorazepam API and excluding its competitors.  Mylan, by obtaining the exclusive licensing agreement with Cambrex, Profarmaco, and Gyma, prevented certain competitors from obtaining lorazepam API, enabling Mylan to significantly raise prices. Had SST agreed to Mylan's proposal, it would have denied lorazepam API to other competitors and potential competitors, allowing Mylan to acquire or maintain monopoly power in the generic lorazepam tablets market.

## XVIII.

## SEVENTH CLAIM FOR RELIEF

## MONOPOLIZATION OF GENERIC CLORAZEPATE TABLETS MARKET

78.     The States reallege and incorporate by reference paragraphs 1 through 54.

79.     Mylan possessed monopoly power in the generic clorazepate tablets market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.  Using this monopoly power, Mylan raised the price of generic lorazepam tablets by amounts ranging from 1,900 percent to over 3,200 percent, depending on the bottle size and strength.

**STATES' AMENDED COMPLAINT, February 8, 1999**

80.     Mylan willfully acquired its monopoly power by entering into an exclusive licensing agreement for Profarmaco's clorazepate API.  This exclusive license provided Mylan with complete control over Profarmaco's supply of clorazepate API in the United States market, which enabled Mylan to deny its actual or potential competitors access to this essential ingredient for producing generic clorazepate tablets and significantly raise prices.

XIX.

EIGHTH CLAIM FOR RELIEF

ATTEMPTED MONOPOLIZATION OF GENERIC CLORAZEPATE TABLETS MARKET

81.     The States reallege and incorporate by reference paragraphs 1 through 54.

82.     Mylan acted with a specific intent to monopolize, and to destroy competition in, the generic clorazepate tablets market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.  Mylan devised and implemented a calculated campaign to raise the price and profitability of clorazepate by locking up the supply of clorazepate API, the most essential ingredient for making clorazepate tablets.

83.     Mylan has willfully engaged in a course of exclusionary conduct in order to obtain a monopoly in the generic lorazepam tablets market, including, *inter alia*, entering into an exclusive licensing agreement for Profarmaco's clorazepate API.

84.     At the time Mylan engaged in these acts, it had a dangerous probability of succeeding in controlling the supply of clorazepate API and excluding its competitors.  Mylan, by obtaining the exclusive licensing agreement with Cambrex, Profarmaco and Gyma, prevented certain competitors from obtaining clorazepate API, enabling Mylan to significantly raise prices.

XX.

28

**STATES' AMENDED COMPLAINT, February 8, 1999**

NINTH CLAIM FOR RELIEF

PRICE FIXING AGREEMENT ON LORAZEPAM API

85.     The States reallege and incorporate by reference paragraphs 1 through 54.

86.     Mylan, Cambrex, Profarmaco, Gyma, and SST conspired to fix, raise, or stabilize the prices of lorazepam API, a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

87.     In furtherance of this conspiracy, Mylan met with SST in Pittsburgh, Pennsylvania on or around November 20, 1997.  At this meeting, or otherwise in the course of their exchanges of information before and after it, Mylan and SST conspired and reached an agreement to fix, raise, or stabilize the price of lorazepam API.  Among other things, SST agreed to raise the price of lorazepam API to its customers.

88.     In accordance with this agreement, Mylan substantially raised the price of its lorazepam tablets, and by virtue of its profit sharing arrangement with Cambrex, Profarmaco, and Gyma, substantially raised the effective price of Profarmaco's lorazepam API.   Also in accordance with this agreement, SST substantially raised the price of its lorazepam API.  By raising the price of its lorazepam API, SST ensured that its customers would follow Mylan's pricing for generic lorazepam tablets.  This agreement further ensured Mylan's ability to promote the success of its unlawful scheme and maintain supracompetitive prices for lorazepam.

XXI.

SUPPLEMENTAL STATE LAW CLAIMS

89.     Plaintiff State of Alaska repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if here set forth in full.

90.     The aforementioned practices by Defendants were in violation of the Alaska Monopolies and Restraint of Trade Act, AS 45.50.562 et seq., and the Alaska Unfair Trade Practices and Consumer Protection Act, AS 45.50.471 et seq.

91.     Plaintiff State of Arkansas repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if here set forth in full.

**STATES' AMENDED COMPLAINT, February 8, 1999**

92.    The aforementioned practices by Defendants were in violation of Arkansas law concerning prohibited practices in restraint of trade and monopolies generally, found at Ark. Code Ann. sec. 4-75-301 et seq. and the Arkansas Deceptive Trade Practices Act found at Ark. Code Ann. sec. 4-88-101 et seq.

93.    Plaintiff State of California repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if here set forth in full.

94.    The aforementioned practices by Defendants were in violation of the Cartwright Act, California Business and Professions Code Sections 16700 *et seq.*, and the California Unfair Competition Act, California Business and Professions Code Sections 17200 *et seq.*

95.    Plaintiff State of Colorado repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if here set forth in full.

96.    The aforementioned practices of Defendants were in violation of the Colorado Antitrust Act of 1992, §§ 6-4-104 and 6-4-105, C.R.S. (1998).

97.    Plaintiff State of Connecticut repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if here set forth in full.

98.    The aforementioned practices of Defendants were in violation of the Connecticut Antitrust Act, Conn. Gen. Stat. Sections 35-24 *et seq.*, and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. Sections 42-110a, *et seq.* The State of Connecticut is entitled to redress pursuant to §§ 35-32, 35-34, 35-38, 42-110m and 42-110o of the Connecticut General Statutes.

99.    Plaintiff District of Columbia repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if here set forth in full.

100.    The aforementioned practices by Defendants were in violation of the District of Columbia Antitrust Act of 1980, D.C. Code 28-4501 *et seq.* (1996 Rpl.).

101.    Plaintiff State of Florida repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if set forth in full herein.

**STATES' AMENDED COMPLAINT, February 8, 1999**

102.    The  aforementioned practices by Defendants were in violation of Chapter 542, Florida Statutes (the Florida Antitrust Act of 1980), and Chapter 501, Part II, Florida Statutes (the Florida Deceptive and Unfair Trade Practices Act).  Florida Attorney General Robert A. Butterworth brings this action in part as an  "enforcing authority" designated under the Florida Deceptive and Unfair Trade Practices Act (Chapter 501, Part II, Florida Statutes, and particularly sections 501.207 and 501.203(2)) on behalf of all "consumers" (as defined in section 501.203(7), Florida Statutes) who purchase or purchased lorazepam or clorazepate at supracompetitive prices either directly from Defendants or indirectly through others in the chain of distribution.  The violations of section 501.204, Florida Statutes, herein alleged have occurred in or affected, and are occurring in or affecting, more than one judicial circuit of the State of Florida.

103.    Plaintiff State of Idaho repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if set forth in full herein.

104.    The aforementioned practices by Defendants were in violation of the Idaho Antitrust Law, Idaho Code §§ 48-101 *et seq.*, and were unconscionable acts or practices in violation of Idaho Code § 48-603(18) of the Idaho Consumer Protection Act.  The State of Idaho is entitled to redress pursuant to Idaho Code Sections 48-103, 48-112, 48-114, 48-606, and 48-607, Idaho Code.  The Attorney General finds that the purposes of title 48, chapter 6, Idaho Code, will be substantially and materially impaired by delay in instituting this action.

105.    Plaintiff State of Illinois repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if set forth in full herein.

106.    The aforementioned practices by the Defendants were in violation of the Illinois Antitrust Act, 740 ILCS 10/3.

107.    Plaintiff State of Iowa repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if set forth in full herein.

108.    The aforementioned practices by the Defendants were in violation of the Iowa Competition Law, Iowa Code sections 553.4 and 553.5.

STATES' AMENDED COMPLAINT, February 8, 1999

109.   Plaintiff Commonwealth of Kentucky repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if set forth in full herein.

110.   The aforementioned practices by the Defendants were in violation of Kentucky Revised Statutes (KRS) 367.175, and the Kentucky Consumer Protection Act, KRS 367.110 *et seq.*

111.   Pursuant to KRS 367.110 *et seq.* the Commonwealth of Kentucky brings this action for three times the amount of damages sustained by the Commonwealth of Kentucky and its natural person citizens, together with costs and attorneys fees, civil penalties and all available equitable relief, including injunctive relief and restitution and disgorgement.

112.   Plaintiff State of Louisiana repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if set forth in full herein.

113.   The aforementioned practices of Defendants were in violation of the Louisiana Monopolies Act, Louisiana Revised Statutes (La. R.S.) 51:121, et seq.  and the Louisiana Unfair Trade and Consumer Protection Act, La. R.S. 51:1401, et seq.  The State of Louisiana is entitled to redress pursuant to La. R.S. 51:136-139 and La. R.S. 51:1404B, La. R.S. 51:1407-1409.

114.   Pursuant to La. R.S. 137 and 138,  and La. R.S. 51:1404B, 1408-1409 and 1414, and acting under the Attorney General's specific authority to bring all Louisiana Monopolies Act actions and any unfair trade action, the State of Louisiana brings this action to recover three times the damages suffered by Louisiana consumers and/or state agencies as a result to Defendants' illegal, anticompetitive conduct.

115.   The State of Louisiana also seeks statutory penalties, costs, disbursements and attorneys fees from Defendants, as well as all available injunctive relief pursuant to La. R.S. 122-123, 129, 130, 138 and 139, La. R.S. 51:1404B, 1408, 1409 and 1414.

116.   Plaintiff State of Maine repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if here set forth in full.

**STATES' AMENDED COMPLAINT, February 8, 1999**

117.    The aforementioned practices by Defendant were in violation of Maine Revised Statutes Annotated, 10 M.R.S.A. § 1101 et seq., and Maine's Unfair Trade Practices Act, 5 M.R.S.A. § 205-A et seq.

118.    Plaintiff State of Michigan repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if here set forth in full.

119.    The aforementioned practices by Defendants were, and are, in violation of the Michigan Antitrust Reform Act MCL 445.771 *et seq.* and the Michigan Consumer Protection Act MCL 445.901 *et seq.* The State of Michigan is entitled to redress pursuant to MCL 445.777, MCL 445.778 and MCL 445.901 et seq.

120.    Plaintiff State of Minnesota repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if set forth in full herein.

121.    The aforementioned practices by Defendants were in violation of the Minnesota antitrust law of 1971, Minn. Stat. §§ 325D.49-325D.66 (1998).

122.    The State of Minnesota is entitled to relief pursuant to Minn. Stat. § 8.31; Minn. Stat. §§ 325D.49-325D.66; and, its authority to bring actions as *parens patriae* on behalf of Minnesota consumers.

123.    Plaintiff State of Missouri repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if here set forth in full.

124.    The aforementioned practices by Defendants were in violation of the Missouri Antitrust Law, §§416.031.1, 416.031.2, and 416.031.3, Revised Statutes of Missouri 1994, and in violation of the Merchandising Practices Act, §407.020, Revised Statutes of Missouri 1994.

125.    Plaintiff State of New Mexico repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if here set forth in full herein.

126.    Part of the trade or commerce affected by the aforementioned practices was within New Mexico.

**STATES' AMENDED COMPLAINT, February 8, 1999**

127.   The aforementioned practices of Defendants were in violation of the New Mexico Antitrust Act, N.M. Stat. Ann. § 57-1-1 to § 57-1-15 (1998).

128.   Plaintiff State of New York repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if here set forth in full.

129.   Defendants' practices violate New York General Business Law §§ 340-347, and also constitute fraudulent or illegal acts under New York Exec. Law § 63(12).

130.   Plaintiff State of North Carolina repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if here set forth in full.

131.   The aforementioned practices by Defendants were in violation of N.C. Gen. Stat. §§ 75-1, -1.1, -2 and -2.1, and were in knowing violation of law.

132.   Plaintiff State of Ohio repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if set forth in full herein.

133.   The aforementioned practices by Defendants were in violation of Ohio's antitrust law, the Ohio Valentine Act, Ohio Rev. Code §§ 1331.01 *et seq.,* Ohio Rev. Code § 109.81, and the common law of Ohio.

134.   Pursuant to Ohio Rev. Code §§ 109.81, 1331.03, 1331.08 and 1331.11, the State of Ohio brings this action for two times the amount of damages sustained by the State and its natural person citizens, together with costs and attorney fees, civil penalties, and all other available equitable relief, including injunctive relief and restitution and disgorgement.

135.   Plaintiff State of Oklahoma repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if set forth in full herein.

136.   The aforementioned practices by Defendants were in violation of 79 Okla. Stat. § 201-212 (Oklahoma Antitrust Reform Act) and 15 Okla. Stat. § 751 *et seq.* (Oklahoma Consumer Protection Act).

137.   Plaintiff State of Oregon repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if set forth in full herein.

**STATES' AMENDED COMPLAINT, February 8, 1999**

138.    The aforementioned practices by the Defendants were in violation of ORS 646.725 and ORS 646.730 of the Oregon Antitrust Act, ORS 646.705, et seq.

139.    The State of Oregon brings this action for civil penalties and all available equitable relief, including injunctive relief, restitution and disgorgement, together with reimbursement of reasonable attorneys fees, experts' fees, and costs from Defendants, pursuant to ORS 646.760, 646.770, 646.775, and the authority under Oregon common law.

140.    Plaintiff State of South Carolina repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if set forth in full herein.

141.    The aforementioned practices by Defendants were in violation of South Carolina Code of Laws §§ 39-5-10, et seq.  The State of South Carolina is entitled to redress pursuant to §§ 39-5-50 and 39-5-110 of the South Carolina General Statutes.

142.    Plaintiff State of South Dakota repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if here set forth in full.

143.    The aforementioned practices of Defendants were in violation of South Dakota antitrust law SDCL ch. 37-1.  The State of South Dakota and persons it represents are entitled to redress pursuant to SDCL 37-1-14.2, 14.3, 32 and 33.

144.    Plaintiff State of Tennessee repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if set forth in full herein.

145.    The aforementioned practices of Defendants were in violation of Tenn. Code Ann. § 47-25-101 et seq.  The State of Tennessee is entitled to damages pursuant to Tenn. Code Ann. § 47-25-106.

146.    The State of Tennessee also brings this action pursuant to Tenn. Code Ann. § 8-6-109 to recover damages pursuant to Tenn. Code Ann. § 47-25-106 suffered by Tennessee governmental entities as a result of the Defendants' illegal and anticompetitive acts.  The State of Tennessee also seeks penalties, costs, disbursements and attorney fees from Defendants, together with any and all injunctive relief to which the State of Tennessee may be entitled.

35

**STATES' AMENDED COMPLAINT, February 8, 1999**

147.    The aforementioned practices by Defendants' were in violation Tenn. Code Ann. § 47-18-101 *et seq.* (the Tennessee Consumer Protection Act of 1977). The State of Tennessee is entitled to recover three (3) times the damages suffered as a result of Defendants' illegal and anticompetitive actions, together with a civil penalty of $1,000.00 for each violation of the Act.

148.    Acting under the authority of the Attorney General and Reporter pursuant to Tenn. Code Ann. § 47-18-108, the State of Tennessee brings this action under Tenn. Code Ann. § 47-18-101 *et seq.* (the Tennessee Consumer protection Act) to recover three (3) times the damages pursuant to Tenn. Code Ann. § 47-18-106 suffered by Tennessee consumers as a result of the Defendants' illegal and anticompetitive actions together with a civil penalty of $1,000.00 for each violation of the Act.

149.    The State of Tennessee also brings this action pursuant to Tenn. Code Ann. §§ 8-6-109 and 47-18-101 *et seq.* (the Tennessee Consumer Protection Act) to recover three (3) times the damages pursuant to Tenn. Code Ann. § 47-18-106 *et seq.* suffered by Tennessee governmental entities as a result of the Defendants' illegal and anticompetitive acts together with a civil penalty of $1,000.00 for each violation of the Act. The State of Tennessee also seeks penalties, costs, disbursements and attorney fees from Defendants, together with any and all injunctive relief to which the State of Tennessee may be entitled.

150.    Plaintiff State of Texas repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if set forth in full herein.

151.    The aforementioned practices of Defendants were in violation of Texas Business and Commerce Code, §15.05 (a), (b). The State of Texas is entitled to redress pursuant to §15.20(a), (b) of the Texas Business and Commerce Code.

152.    Plaintiff State of Utah repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if set forth in full herein.

153.    The aforementioned practices of Defendants were in violation of the Utah Antitrust Act, Utah Code Ann. §§ 76-10-911 *et seq.*

**STATES' AMENDED COMPLAINT, February 8, 1999**

154.    The State of Utah seeks injunctive relief, a civil penalty of $500,000 per violation, costs of suit, and reasonable attorneys fees as provided by the Utah Antitrust Act, Utah Code Ann. §§ 76-10-918 and 76-10-919 (3).

155.    The State of Utah also brings this action pursuant to Utah Code Ann. § 13-5-14 on behalf of the State of Utah as a purchaser of pharmaceuticals and as *parens patriae* on behalf of Utah purchasers for violations of the Utah Unfair Trade Practices Act, Utah Code Ann. § 13-5-3 (5), (6).  The State of Utah seeks to recover three times the damages suffered by Utah governmental entities and Utah consumers as a result of Defendants' illegal, anticompetitive conduct.  In addition to the treble damages, the State of Utah seeks all available injunctive relief available under Utah Code Ann. § 13-5-14 and its costs.

156.    Plaintiff State of Vermont repeats each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if here set forth in full.

157.    The aforementioned practices by Defendants were in violation of the Vermont Consumer Fraud Act, 9 V.S.A. § 2453.

158.    Pursuant to 9 V.S.A.  §§ 2458 and 2461, and acting under the Vermont Attorney General's authority to pursue actions as parens patriae, the State of Vermont brings this action to recover three times the damages suffered by Vermont consumers as a result of Defendants' illegal, anticompetitive conduct.

159.    The State of Vermont also brings this action pursuant to 9 V.S.A. §§ 2458 and 2461, to recover three times the damages sustained by the State, together with costs and attorneys fees, civil penalties, and all other available equitable relief, including injunctive relief, restitution and disgorgement.

160.    Plaintiff State of Washington repeats and realleges each and every allegation contained in paragraphs 1 through 88.

161.    The aforementioned practices by Defendants were and are in violation of Wash. Rev. Code 19.86.010 et seq.

**STATES' AMENDED COMPLAINT, February 8, 1999**

162.   Plaintiff State of West Virginia repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if set forth in full herein.

163.   The aforementioned practices by Defendants were in violation of the West Virginia Antitrust Act, W. Va. Code § 47-18-1 *et seq.*, and in violation of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 *et seq.*

164.   Plaintiff State of Wisconsin repeats and realleges each and every allegation contained in paragraphs 1 through 88 with the same force and effect as if set forth in full herein.

165.   The aforementioned practices by Defendants were in violation of the Wisconsin Trusts and Monopolies Act, Wis. Stats. § 133.03.

## XXII.

### JURY TRIAL DEMAND

166.   The States demand trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues triable of right by jury.

## XXIII.

### PRAYER FOR RELIEF

WHEREFORE, the States pray that the Court:

1.   Adjudge and decree that Defendants have engaged in conduct in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2;

2.   Adjudge and decree that Defendants have engaged in conduct in violation of the state statutes enumerated in Paragraphs 89 through 165;

3.   Enjoin and restrain, pursuant to state and federal law, the Defendants, their affiliates, assignees, subsidiaries, successors and transferees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, from continuing, maintaining or renewing the contracts, combinations or conspiracies alleged herein, or from engaging in any other contract, combination or conspiracy

38

**STATES' AMENDED COMPLAINT, February 8, 1999**

having a similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect;

4.      Declare void and unenforceable the exclusive agreements entered into by Defendants Mylan, Cambrex, Profarmaco and Gyma dated November 14, 1997;

5.      Enter judgment for the States and award all other available equitable relief, including, but not limited to, restitution and disgorgement, as the Court finds necessary to redress Defendants' violations of State and federal law;

6.      Award each State the costs of this action, including reasonable attorneys' fees, and, where applicable expert fees;

7.      Enter judgment for the States for three (3) times the amount of damages sustained by the States (as direct purchasers or assignees of direct purchasers) as allowed by federal law, together with the costs of this action, including reasonable attorneys' fees;

8.      Enter judgment for the States of Alaska, California, Colorado, Florida, Idaho, Illinois, Louisiana, Maine, Minnesota, New Mexico, New York, North Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin; and the Commonwealth of Kentucky for three (3) times the amount of damages sustained by the States, (including damages for medical reimbursement programs) and the entities they represent, or on whose behalf this suit is brought, as allowed by State law, together with the costs of this action, including reasonable attorneys' fees;

9.      Enter judgment for the States of Alaska, California, Illinois, Louisiana, Maine, Michigan, Minnesota, New Mexico, New York, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin, the Commonwealth of Kentucky; and the District of Columbia for three (3) times the amount of damages sustained by the persons they represent, or on whose behalf this suit is brought, as allowed by state law, together with the costs of this action, including reasonable attorneys' fees;

**STATES' AMENDED COMPLAINT, February 8, 1999**

10.     Enter judgment for the States of Arkansas, Colorado, Iowa, Michigan, Oklahoma, Tennessee and Washington, and for the District of Columbia, for the damages sustained by the States and the District of Columbia, (including damages for medical reimbursement programs) and the entities they represent, or on whose behalf this suit is brought, as allowed by State law, together with the costs of this action, including reasonable attorneys' fees, as allowed by State law;

11.     Enter judgment for the States of Arkansas, Florida, Iowa, Missouri, Oklahoma and Tennessee for the damages sustained by the persons they represent, or on whose behalf this suit is brought, as allowed by state law, together with the costs of this action, including reasonable attorneys' fees;

12.     Enter judgment for the State of Ohio for two (2) times the amount of damages sustained by the State and the persons it represents as allowed by state law, together with costs and reasonable attorneys' fees, and all other equitable relief, including injunctive relief, restitution and disgorgement;

13.     Enter judgment for the Plaintiff States of Maine and South Carolina under state law, for damages as may be necessary to restore any person or entity who has suffered any ascertainable loss by reason of the use or employment of defendants' unlawful methods, acts or practices and any monies which may have been acquired by means of the unlawful practices of the defendants, together with the costs of this action, including reasonable attorneys' fees.

14.     Enter judgment for the States of Alaska, Arkansas, California, Colorado, Connecticut, Florida, Idaho, Illinois, Iowa, Louisiana, Maine, Michigan, Minnesota, Missouri, New Mexico, New York, North Carolina, Ohio, Oregon, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin; and the Commonwealth of Kentucky against the Defendants for the maximum civil penalties allowable under the laws of each State;

40

**STATES' AMENDED COMPLAINT, February 8, 1999**

15.     Enter judgment for the State of Tennessee, its governmental entities and for consumers damaged as a result of Defendants' actions denying the Defendants and each of them the right to do and be prohibited from doing business in the State of Tennessee;

16.     Declare that pursuant to Tenn. Code Ann. § 47-25-104(b), the Defendants and each of them be denied the right to do and be prohibited from doing business in the State of Tennessee;

17.     Enter judgment pursuant to Wis. Stats. § 133.14 for the State of Wisconsin and its consumers 1) declaring void any and all contracts or agreements founded upon, the result of, growing out of, or connected with, the violations of the Wisconsin Trusts and Monopolies Act, Wis. Stat. § 133.03, either directly or indirectly; and, 2) for all payments made by the State of Wisconsin and its consumers which relate, directly or indirectly, to such contracts or agreements;

18.     Grant such other and further relief, including all other available equitable relief, as the case may require and the Court may deem just and proper to redress Defendants' violations of State and federal law;

41

**STATES' AMENDED COMPLAINT, February 8, 1999**

Respectfully submitted this __8ᵗʰ__ day of __February__ 1999.

**MIKE HATCH**
Attorney General
State of Minnesota

BY: _Ann Beimdiek Kinsella_

Ann Beimdiek Kinsella
Minn. Atty. #256201

_Peter B. Hofrenning_

Peter B. Hofrenning
Minn. Atty. #247303
Assistant Attorneys General
Antitrust and Commerce Division
Minnesota Attorney General's Office
N.C.L. Tower, Suite 1200
445 Minnesota Street
St. Paul, MN 55101
(651) 296-7575

Counsel for Minnesota
and on behalf of the Plaintiff States
(listed  below)

**STATES' AMENDED COMPLAINT, February 8, 1999**

**Plaintiff States:**

**STATE of ALASKA**
BRUCE M. BOTELHO
Attorney General
Daveed A. Schwartz
Assistant Attorney General
Consumer Protection/Antitrust Unit
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska  99501
(907) 269-5100

**STATE of ARKANSAS**
MARK PRYOR
Attorney General
Teresa Brown
Assistant Attorney General
200 Tower Building
323 Center Street
Little Rock, AR  72201-2601
(501) 682-6150

**STATE of CALIFORNIA**
BILL LOCKYER
Attorney General
Roderick E. Walston
Chief Assistant Attorney General
Barbara M. Motz
Acting Assistant Attorney General
Natalie S. Manzo
Deputy Attorney General
300 South Spring St., Suite 5000
Los Angeles, California 90013
(213) 897-2704

**STATES' AMENDED COMPLAINT, February 8, 1999**

**STATE of COLORADO**
KEN SALAZAR
Attorney General
Jan Michael Zavislan
First Assistant Attorney General
Maria E. Berkenkotter
Assistant Attorney General
1525 Sherman Street, 5th Floor
Denver, CO  80203
(303) 866-5079

**STATE of CONNECTICUT**
RICHARD BLUMENTHAL
Attorney General
Steven M. Rutstein
Department Head
Antitrust and Consumer Protection Department
Arnold B. Feigin
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
(860) 808-5400

**DISTRICT of COLUMBIA**
JOHN M. FERREN
Corporation Counsel
Robert R. Rigsby
Deputy Corporation Counsel
Enforcement Division
Charlotte W. Parker
Director, Civil Division
Bennett Rushkoff
Special Counsel
Stuart Cameron
Assistant Corporation Counsel
441 4th Street, N.W., Suite 6N72
Washington, D.C.  20001
(202) 727-6240

44

**STATES' AMENDED COMPLAINT, February 8, 1999**

**STATE of FLORIDA**
ROBERT A. BUTTERWORTH
Attorney General
Patricia A. Conners
Chief, Antitrust Section
Kimberly L. King
Peter H. Williams
Assistant Attorneys General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3600

**STATE of IDAHO**
ALAN G. LANCE
Attorney General
Brett T. DeLange
Deputy Attorney General
Consumer Protection Unit
700 W. Jefferson Street, Room 210
Boise, ID  83720-0010
(208) 334-2424

**STATE of ILLINOIS**
JAMES E. RYAN
Attorney General
Christine H. Rosso
Chief, Antitrust Bureau
Don R. Sampen
Assistant Attorney General
100 West Randolph Street
Chicago, IL 60601
(312) 814-5610

**STATE of IOWA**
THOMAS J. MILLER
Attorney General
William L. Brauch
Special Assistant Attorney General
John F. Dwyer
Attorney, Iowa Department of Justice
310 Maple Street
Des Moines, IA  50319
(515) 281-8414

45

**STATES' AMENDED COMPLAINT, February 8, 1999**

**COMMONWEALTH of KENTUCKY**
ALBERT BENJAMIN CHANDLER III
Attorney General
David Vandeventer
Assistant Attorney General
1024 Capital Center Drive
Frankfort, KY  40602-2000
(502) 696-5389

**STATE of LOUISIANA**
RICHARD P. IEYOUB
Attorney General
Jane Bishop Johnson
Assistant Attorney General
301 Main Street, Suite 1250
Baton Rouge, LA  70804
(504) 342-2754

**STATE of MAINE**
ANDREW KETTERER
Attorney General
Stephen L. Wessler
Assistant Attorney General
Chief, Public Protection Division
6 State House Station
Augusta, ME  04333-0006
(207) 626-8845

**STATE of MICHIGAN**
JENNIFER M. GRANHOLM
Attorney General
Paul Novak
Assistant Attorney General
Consumer Protection Division
Antitrust and Franchise Section
670 G. Mennen Williams Building
525 W. Ottawa Street
P. O. Box 30213
Lansing, MI  48913
(517) 373-7117

**STATES' AMENDED COMPLAINT, February 8, 1999**

**STATE of MINNESOTA**
MIKE HATCH
Attorney General
Ann Beimdiek Kinsella
Peter B. Hofrenning
Assistant Attorneys General
Antitrust and Commerce Division
N.C.L. Tower, Suite 1200
445 Minnesota Street
St. Paul, MN 55101
(651) 296-7575

**STATE of MISSOURI**
JEREMIAH W. (JAY) NIXON
Attorney General
Douglas M. Ommen, Chief Counsel
Michael J. Delaney, Assistant Attorney General
Consumer Protection Division
111 North Seventh Street
Suite 204
St. Louis, MO  63101
(314) 340-6816

**STATE of NEW MEXICO**
PATRICIA A. MADRID
Attorney General
Susan White
Chief, Antitrust Unit
Michael P. Fricke
Assistant Attorney General
6301 Indian School Road NE., Suite 400
Albuquerque, NM  87110
(505) 841-8098

**STATES' AMENDED COMPLAINT, February 8, 1999**

**STATE of NEW YORK**
ELIOT SPITZER
Attorney General
Stephen D. Houck
Chief, Antitrust Bureau
Robert L. Hubbard
Susan E. Raitt
Assistant Attorneys General
120 Broadway, Suite 26-01
New York, NY 10271
(212) 416-6163

**STATE of NORTH CAROLINA**
MICHAEL F. EASLEY
Attorney General
K.D. Sturgis
Assistant Attorney General
Consumer Protection/Antitrust Section
114 W. Edenton Street
P.O. Box 629
Raleigh, NC 27602-0629
(919) 716-6000

**STATE of OHIO**
BETTY D. MONTGOMERY
Attorney General
Doreen Johnson
Chief, Antitrust Section
Raj Malik
Assistant Attorney General
Mitchell L. Gentile
Senior Attorney
140 East Town Street, 1st Floor
Columbus, Ohio 43215
(614) 466-4328

**STATES' AMENDED COMPLAINT, February 8, 1999**

**STATE of OKLAHOMA**
W.A. DREW EDMONDSON
Attorney General
Steven J. Leippert
Assistant Attorney General
4545 N. Lincoln Boulevard
Suite 260
Oklahoma City, OK  73105
(405) 522-3082

**STATE of OREGON**
HARDY MYERS
Attorney General
Andrew E. Aubertine
Assistant Attorney General
Department of Justice
Justice Building
1162 Court Street NE, Suite 100
Salem, OR  97310
(503) 378-4732

**COMMONWEALTH of PENNSYLVANIA**
D. MICHAEL FISHER
Attorney General
James A. Donahue III
Chief Deputy Attorney General
Antitrust Section
Deneice Covert Zeve
Deputy Attorney General
14th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-4530

**STATE of SOUTH CAROLINA**
CHARLES M. CONDON
Attorney General
C. Havird Jones, Jr.
Senior Assistant Attorney General
Rembert C. Dennis Building
1000 Assembly Street, Suite 501
Columbia, SC  29211-1549
(803) 734-3970

**STATES' AMENDED COMPLAINT, February 8, 1999**

**STATE of SOUTH DAKOTA**
MARK BARNETT
Attorney General
Jeffrey P. Hallem
Assistant Attorney General
500 East Capitol
Pierre, SD  57501-5070
(605) 773-3215

**STATE of TENNESSEE**
PAUL G. SUMMERS
Attorney General and Reporter
Dennis J. Garvey
Deputy Attorney General
Antitrust Division
J. Patrick Riceci
Assistant Attorney General
425 5th Avenue North
Nashville, TN  37243
(615) 532-8986

**STATE of TEXAS**
JOHN CORNYN
Attorney General
Mark Tobey
Chief, Antitrust Section
Kelly Garcia
Assistant Attorney General
300 W. 15th Street, 9th Floor
P. O. Box 12548
Austin, TX  78711-2548
(512) 463-4012

**STATE of UTAH**
JAN GRAHAM
Attorney General
Wayne Klein
Division Chief
Antitrust Section
160 East 300 South
Salt Lake City, UT  84114-0872
(801) 366-0358

**STATES' AMENDED COMPLAINT, February 8, 1999**

**STATE of VERMONT**
WILLIAM H. SORRELL
Attorney General
Julie Brill
Rebecca Ellis
Assistant Attorneys General
Antitrust and Consumer Fraud Unit
109 State Street
Montpelier, VT  05609-1001
(802) 828-5507

**STATE of WASHINGTON**
CHRISTINE O. GREGOIRE
Attorney General
Jon P. Ferguson
Senior Counsel
Chief, Antitrust Section
Marta Lowy
Assistant Attorney General
Antitrust Section
900 Fourth Avenue, Suite 2000
Seattle, WA  98164-1012
(206) 464-7744

**STATE of WEST VIRGINIA**
DARRELL V. McGRAW, JR.
Attorney General
Jill L. Miles
Deputy Attorney General
Douglas L. Davis
Assistant Attorney General
Consumer Protection and Antitrust Division
812 Quarrier Street
Charleston, WV 25301
(304) 558-8986

**STATES' AMENDED COMPLAINT, February 8, 1999**

**STATE of WISCONSIN**
JAMES E. DOYLE
Attorney General
Kevin J. O'Connor
Assistant Attorney General
123 West Washington Avenue
P.O. Box 7857
Madison, WI 53703-7857
(608) 266-8986

AG:179891 v1

**STATES' AMENDED COMPLAINT, February 8, 1999**

## CERTIFICATE OF SERVICE BY
## FACSIMILE AND CERTIFIED MAIL

Re:    *State of Connecticut, et al. v. Mylan Laboratories, Inc., et al.*
       **Court File No. 1:98CV03115**

STATE OF MINNESOTA    )
                      ) ss.
COUNTY OF RAMSEY      )

I, Ann Beimdiek Kinsella, will deliver this amended complaint on February 8, 1999, via facsimile and certified mail to the parties listed on Attachment A.

Ann Beimdiek Kinsella

Subscribed and sworn to before me on
this 5th day of February 1999.

NOTARY PUBLIC

ATTACHMENT A

Irving Scher, Esq.                           Gary W. Kubek, Esq.
Debra J. Pearlstein, Esq.                    Martin Frederic Evans, Esq.
Weil, Gotschal & Manges LLP                  Debevoise & Plimpton
767 Fifth Avenue                             875 Third Avenue
New York, NY  10153                          New York, NY 10022
FAX:  212-833-8926                           FAX:  212-909-6836

Sidney Rosdeitcher, Esq.                     Jim Miller, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison     Rogers and Wells
1285 Avenue of the Americas                  200 Park Avenue
New York, NY  10019-6064                     New York, NY  10166
FAX:  212-757-3990                           FAX:  212-878-8375

AG:180362 v1